587 So.2d 787 (1991)
STATE of Louisiana
v.
Herbert JONES, Jr.
No. Cr89-997.
Court of Appeal of Louisiana, Third Circuit.
October 2, 1991.
Writ Denied December 13, 1991.
*789 Henry Sanders, Jena, for defendant-appellant.
Katherine Petersen, Crim. Div., Baton Rouge, for plaintiff-appellee.
Before GUIDRY, YELVERTON and KNOLL, JJ.
GUIDRY, Judge.
On December 2, 1988, Herbert Jones, Jr. and Ronnie McCoy were charged by bill of information with distribution of cocaine, a violation of La.R.S. 40:967(A)(1). On January 9, 1989, the bill of information was amended to substitute Louis McCoy, brother of Ronnie McCoy, as co-defendant. On April 25, 1989, defendant Jones was tried separately by jury and unanimously found guilty. On July 27, 1989, Jones was sentenced to 10 years at hard labor. Jones appeals urging seven assignments of error.

FACTS
In September 1988, Deputy Kenneth Hertzog, a member of the Rapides Parish Sheriff's Office working undercover for the Central Louisiana Narcotics Task Force, rented a room at the Jena Motel. Deputy Hertzog did this based on information from a confidential informant (CI) that Herbert Jones, Jr. and a confederate were dealing drugs from the motel. According to Hertzog's testimony, at 6:30 p.m. on September 30, 1988, the CI introduced Deputy Hertzog to Jones. The subject of narcotics immediately surfaced and Jones allegedly offered to sell cocaine to Hertzog. Jones told Hertzog that he could get $200.00 worth of cocaine for only half the price. Not having the drugs on him, Jones requested that *790 Hertzog front the $100.00. Hertzog, hesitant to give money to a complete stranger, finally agreed following Jones' reassurances that he would return with the cocaine.
Hertzog stated that at that point, Louis McCoy entered the room and was introduced as "Ronnie McCoy". McCoy explained to Hertzog that the motel was their operational base for drug dealings. Once Jones received the $100.00, Jones and McCoy left to get the drugs. At approximately 9:30 p.m., they returned with the drugs. Jones handed Hertzog a plastic bag containing a white powdered substance.
According to Hertzog, the CI was present throughout the entire transaction, witnessing the negotiation of the purchase, the transfer of the money and the delivery of the cocaine.
Hertzog marked the cocaine for evidentiary purposes. Once the crime lab identified the substance as cocaine, a warrant was issued for the arrest of Herbert Jones, Jr. and Ronnie McCoy. On October 21, 1988, Jones was arrested. Louis McCoy was also arrested for interfering in the arrest of Jones. On December 2, 1988, Jones and Ronnie McCoy were charged by bill of information with the violation of La.R.S. 40:967(A)(1). On January 9, 1989, the bill of information was amended to substitute Louis McCoy, Ronnie's brother, as co-defendant.
On April 25, 1989, Jones was tried separately. Based solely on Deputy Hertzog's testimony that Jones sold him cocaine, the jury unanimously convicted Jones. At trial Jones denied being at the motel on September 30, 1988; denied that he ever met with Hertzog; and, denied having sold cocaine to him. The trial court ruled that the State's failure to disclose the CI's identity at preliminary examination on request of Jones, was not prejudicial to his defense. McCoy, Jones' alleged confederate who was subpoenaed by Jones, refused to testify on the basis of the Fifth Amendment.
As aforestated, Jones was found guilty and was sentenced to ten years at hard labor without probation. Jones' motion for a new trial was denied. On June 27, 1989, Louis McCoy was acquitted in a separate trial.
Defendant appeals urging the following assignments of error: (1) defendant was not rearraigned on the amended bill of information; (2) the admission into evidence of testimony regarding the customary use of CIs was prejudicial error and failure to disclose the CI's identity violated defendant's Sixth Amendment rights; (3) the State failed to establish the requisite chain of custody necessary to admit the cocaine into evidence; (4) defendant's Sixth Amendment right of confrontation was denied by McCoy's invocation of the Fifth Amendment; (5) the evidence was insufficient to establish guilt beyond a reasonable doubt; (6) the sentence violates the Eighth Amendment's proscription against cruel and unusual punishment; and, (7) the presentence investigation was improperly conducted.

ASSIGNMENT OF ERROR NO. 1
Defendant contends the trial court erred in overruling his objection to proceeding to trial because he was never arraigned on the amended bill of information. Specifically, defendant contends that because the amendment alleged joint activity with another person, it was one of substance which required him to be rearraigned on the amended bill of information.
The bill of information originally filed on December 2, 1988, charged the defendant and Ronnie Wayne McCoy with distribution of cocaine. On January 9, 1989, four months prior to trial, the bill was amended to charge the defendant and Louis McCoy (rather than Ronnie Wayne McCoy) for this crime. While the defendant filed no pretrial objection to this amendment, he objected at trial because he was not rearraigned on the amended bill.
Rearraignment after amendment of the bill of information is not required where the substance of the charge has not been changed. The purpose of an arraignment is to notify a defendant of the charge against him. La.C.Cr.P. art. 551. Where amendment of the indictment (bill of information) is designed to cure deficiencies in the charging instrument and not to alter *791 the nature of the crime, a defendant is not entitled to be rearraigned on the amended indictment (bill of information). State v. Bluain, 315 So.2d 749 (La.1975). Because the defendant was arraigned on the original bill of information, his plea of not guilty also applied to the amended bill since the amendment was designed to cure deficiencies in the charging instrument and not to alter the nature of the crime.
The First Circuit has taken this a step further stating in State v. Gaines, 452 So.2d 239 (La.App. 1st Cir.1984), sentence set aside, 455 So.2d 1179 (La.1984):
"A bill of information or indictment may be amended, even substantially, before the first prospective juror is sworn and examined. It appears that it is totally unnecessary that a second arraignment be held, even if the amendment of the bill of information or indictment be one that touches substance. State v. Bluain, 315 So.2d 749 (La.1975); State v. Hubbard, 279 So.2d 177 (La.1973)."
The trial judge specifically noted this case when he denied defendant's objection.
La.C.Cr.P. art. 487 allows amendment of a defective indictment (information). Under La.C.Cr.P. art. 489, the defendant can move for a continuance if the amendment is prejudicial. In this case, the defendant failed to demonstrate that any prejudice was created by the amendment. No pretrial objection was filed and the amendment was completed four months before trial.
This assignment of error lacks merit.

ASSIGNMENT OF ERROR NO. 2
On January 12, 1989, the defendant filed a Motion for Bill of Particulars. He did not specifically request the name of any witnesses present during the transaction or of any confidential informant. On the same date, defendant filed a Motion for Discovery. In the Motion for Discovery, defendant also failed to request the name of any confidential informant or other witness present during the transaction. At the preliminary examination, defendant objected to the failure of Detective Hertzog to identify "the confidential informant that you refer to in your report and in your testimony". The trial court sustained the objection. The following colloquy transpired between the trial judge and the attorney for defendant:
"THE COURT: You might by other means be able to discover that particular individual but as far as the preliminary examination at this time, the objection is sustained.
MR. DURUSAU: I'd like to note our exception, Your Honor.
THE COURT: So noted."
At trial, defense counsel asked Detective Hertzog during cross-examination if he recalled him asking the identity of the confidential informant on March 7, 1989. The witness responded, "yes, I do". Defense counsel then asked if he disclosed the identity to him. At this time the State objected and the following colloquy transpired:
"MR. WILSON: Your Honor, I know, I know Mr. Durusau doesn't mean for it to come out the way it sounded but the court will recall that there was an objection sustained to ...
THE COURT: The objection is ...
MR. WILSON: ... the question.
THE COURT: The objection is still sustained as to that.
MR. DURUSAU: I didn't, I didn't ask himI didn't ask him that question, Your Honor. I asked him: did he tell me on March 7, 1989, who the confidential informant was?
THE COURT: I'm assuming that an objection was made at that point and he didn't have to answer the question.
MR. WILSON: That's right, Your Honor.
MR. DURUSAU: So, the answer would be: no, he didn't.
THE COURT: Nothe answer is not `no', the answer is that the question was objected to and the objection was sustained therefore he never had to answer the question then.
MR. DURUSAU: Well, I'll rephrase the question.
THE COURT: All right."
*792 Defense counsel then asked Detective Hertzog if, as a result of the objection and the court sustaining the objection, if he did not disclose the identity of the informant at the prior hearing to which Detective Hertzog stated "that's correct". No further questions were asked of Hertzog concerning the confidential informant. During direct examination of the State's next witness, Captain Sellers, the State asked why confidential informants are confidential. At trial, defendant did not seek to discover the identity of the confidential informant. Defendant objected only to the State's witness testifying as to why a confidential informant is confidential.
In brief, defendant states that he attempted to elicit the name of the informant from Deputy Hertzog during cross-examination but was denied this request. However, the transcript clearly shows that defense counsel never sought this information and therefore the issue was not properly preserved for appeal. La.C.Cr.P. art. 841 states in pertinent part that:
"An irregularity or error cannot be availed of after verdict unless it was objected to at the time of occurrence. A bill of exceptions to rulings or orders is unnecessary. It is sufficient that a party, at the time the ruling or order of the court is made or sought, makes known to the court the action which he desires to take, or of his objection to the action of the court, and the grounds therefore appear."
However, in any event, even had defendant at trial sought to determine the identity of the confidential informant, was denied this information and preserved the issue for appeal, we conclude that, under the circumstances of this case, denial would have been proper.
As a general rule, the State is allowed to withhold the identity of an informer from the accused. Defendant bears the burden of demonstrating exceptional circumstances pertaining to his defense before disclosure is required. State v. Simon, 544 So.2d 610 (La.App. 3rd Cir.1989), writ denied, 550 So.2d 647 (La.1989). Wide discretion is vested in the trial court to determine when disclosure is proper. Generally speaking, disclosure of the name of the confidential informant will be ordered when the prosecution's case shows that the informer, cooperating with the police, participated in the crime. Roviaro v. United States, 353 U.S. 53, 77 S.Ct. 623, 1 L.Ed.2d 639 (1957); State v. Dotson, 260 La. 471, 256 So.2d 594 (1971), cert. denied, 409 U.S. 913, 93 S.Ct. 242, 34 L.Ed.2d 173 (1972); State v. Fontenot, 524 So.2d 867 (La.App. 3rd Cir.1988).
In the case sub judice, the trial court denied disclosure of the confidential informant during the cross-examination of a witness in the preliminary examination. The court specifically stated that the denial was for the purposes of that hearing only. At no point after or before does the record indicate the defendant attempted to learn the identity of the confidential informant. At trial, the defense attorney never requested the identity of the confidential informant. The trial judge did comment "[t]he objection is still sustained as to that". However, the defense attorney was quick to point out that he did not ask him "that question". He only asked him "did he tell me on March 7, 1989, who the confidential informant was?" Therefore, the trial court was not called upon at trial to determine whether or not the disclosure of the confidential informant was proper or necessary for the defense.
In Roviaro v. United States, supra, the Supreme Court ordered that a confidential informant's identity be disclosed when the informant and defendant were the only participants and eyewitnesses to the alleged drug transaction. In State v. Fontenot, supra, this court ordered disclosure of a confidential informant's identity where the defendant was charged as a principal to distribution of marijuana because the informant made an agreement with the defendant to procure another to sell marijuana. In the case sub judice, the confidential informant was only present during the transaction and merely introduced the defendant to Detective Hertzog. He did not participate in any manner in the actual transaction.
*793 In State v. James, 396 So.2d 1281 (La. 1981), a confidential informant introduced the undercover officer to the defendant and accompanied him when the transaction took place. The court held that these actions alone did not amount to participation in the drug offense as setting up defendant was something which he was predisposed to do from the start. The mere presence of an informer in the vehicle during the journey to acquire the drugs did not warrant pretrial disclosure. In State v. Davis, 411 So.2d 434 (La.1982), the court held that even though a confidential informant was present during the direct transactions, there was nothing to indicate in the record that he was a participant. The undercover police officer and defendant were the participants in the transaction and the trial judge did not abuse his discretion in finding that defendant failed to meet the burden of demonstrating exceptional circumstances pertaining to his defense.
In a similar case, this court found non-disclosure of a confidential informant's identity was proper. In State v. White, 508 So.2d 982 (La.App. 3rd Cir.1987), writ denied, 512 So.2d 1184 (La.1987), we found that a defendant was not entitled to discover the identity of a confidential informant who introduced defendant to the police officer, and who was present at the sale, when defendant and the officer voluntarily engaged in a conversation which led to the sale because the informant did not actively participate in the transaction.
Other courts of appeal have protected the identity of a confidential informant in similar cases. The First Circuit Court of Appeal does not consider the confidential informant a participant, but an "onlooker" when he witnesses a drug transaction after introducing an undercover officer to a defendant for the purpose of making such a purchase. State v. Buffington, 452 So.2d 1313 (La.App. 1st Cir.1984). Also, the Second Circuit has held that the State is not required to disclose the identity of an informant who was present in a car during an alleged transaction between an officer and the defendant, where the informant did not participate in the transfer of money from the officer to the defendant, or in the transfer of drugs from the defendant to the officer. State v. McGee, 478 So.2d 249 (La.App. 2d Cir.1985). The Fourth Circuit case of State v. Clouatre, 482 So.2d 106 (La.App. 4th Cir.1986) and the Fifth Circuit case of State v. Quetant, 466 So.2d 567 (La.App. 5th Cir.1985), are in the same vein. We, therefore, conclude that even had defendant preserved this issue for appellate review, under the circumstances, disclosure of the confidential informant's identity was not required.
In addition, defendant assigns as error the trial court's allowing the testimony of Captain Sellers concerning the general use of confidential informants. Defendant argues that this testimony had the effect of implicitly placing the endorsement of the trial judge on the activity of the use of confidential informants. This is not substantiated by the record. Defendant does not cite any authority for this proposition and only elaborates upon the general law as to when the identity of an informant may be withheld.
The trial of this case took place in April 1989, after the Code of Evidence was adopted. C.E. art. 401 defines relevant evidence as:
"... evidence having any tendency to make the existence of any fact that is of consequence to the determination of the action more probable or less probable than it would be without the evidence."
The testimony of Captain Sellers on this issue was as follows: "Q: Captain Sellers, do you or does your task force in the course of doing its job utilize people called `confidential informants'?
A: Yes, sir, we do.
Q: Is this done often?
A: Yes, sir, quite often.
Q: Are they, why are they called `confidential informants'?
(At this point, an objection was made by defense counsel to which the trial court allowed the question.)
* * *

*794 Q: Captain Sellers, why are confidential informants confidential?
A: Because they wish to remain that way. We use confidential informants to or for introductions of undercover agents that, an undercover agent could not get to a certain point that a confidential informant can get an agent, and when we get to a certain point and the transaction takes place, that person of course refuses, wishes to remain anonymous because of several reasons."
Captain Sellers did not elaborate on the use of confidential informants but made a general statement as to their use in narcotics investigation. The evidence was offered to explain a relevant fact to show that informants are usually used to permit undercover officers to gain entrance into the society of drug dealers and not to transact the purchase of drugs. A trial judge is vested with wide discretion in determining the relevancy of evidence and his ruling will not be disturbed on appeal absent a clear showing of abuse of discretion. State v. Miles, 402 So.2d 644 (La.1981); State v. Williams, 447 So.2d 495 (La.App. 3rd Cir.1984), writ denied, 450 So.2d 969 (La.1984).
This assignment of error is without merit.

ASSIGNMENT OF ERROR NO. 3
Defendant next contends that the trial court erred in allowing the cocaine sold by defendant to Deputy Hertzog to be introduced in evidence because the State did not demonstrate the requisite "chain of custody".
This contention is based on alleged discrepancies in the testimony of T.J. Shuflin who stated that he either returned the sample to Deputy Sellers or to his secretary after testing the substance.
Evidence is admissible at trial if properly identified. Physical evidence is admissible if the chain of custody is established from the time of seizure to the time it is offered in evidence. The law does not require that the evidence relating to chain of custody eliminate all possibilities regarding identification. It suffices if the evidence establishes that it is more probable than not that the object offered in evidence is the one connected with the case. A preponderance of the evidence is sufficient. A defect in the chain of custody goes to the weight of the evidence rather than to its admissibility. Ultimately, connexity is a factual matter for determination by the trier of fact. State v. Sweeney, 443 So.2d 522 (La.1983). State v. Simon, 544 So.2d 610 (La.App. 3rd Cir.1989), writ denied, 550 So.2d 647 (La.1989).
The record in this case as to chain of custody is sufficient. Deputy Hertzog testified that after he purchased cocaine from the defendant, he put it in his pocket until returning to his office. Deputy Hertzog marked and tagged the evidence with name of defendant, time, and the date of the transaction. This envelope was placed in a secured locker to which only Deputy Hertzog had a key until it was submitted to T.J. Shuflin of the Northwestern Louisiana Criminalists Laboratory. Shuflin testified that he received the evidence from Deputy Hertzog, placed a case number on the envelope and initialed it. He took some of the contents out, tested it, and then resealed the envelope. Shuflin gave a detailed description of the manner in which he kept track of the evidence while it was in the crime lab. Finally, Shuflin testified that he returned the cocaine to either Captain Sellers or his secretary. Captain Sellers testified that the evidence was returned to his office September 25, 1989. It was then placed under lock and key in the evidence locker until the date of trial.
This assignment of error is without merit.

ASSIGNMENT OF ERROR NO. 4
Defendant next contends that the trial court violated his constitutional right to compulsory process and confrontation when it allowed his alleged co-conspirator, Louis McCoy, to invoke his 5th Amendment right against self-incrimination.
Louis McCoy was subpoenaed and called to testify on behalf of the defendant. On advice of his counsel, the alleged co-conspirator, *795 who was to be tried separately, invoked his right against self-incrimination. After a hearing outside the presence of the jury, the trial court denied defendant's request to force McCoy to answer questions.
The trial court did not err. Article 1 § 16 of the Louisiana Constitution of 1974 provides that "... [n]o person shall be compelled to give evidence against himself...". Claims of privilege are preferably determined outside the presence of the jury. A trial judge may allow witnesses to be examined outside the presence of the jury in order to determine if the privilege against self incrimination claim is proper. State v. Edwards, 419 So.2d 881 (La.1982); State v. Johnson, 404 So.2d 239 (La.1981), cert. denied 456 U.S. 925, 102 S.Ct. 1970, 72 L.Ed.2d 440. The privilege against self-incrimination must be liberally construed in favor of the accused or witness. State v. Wilson, 394 So.2d 254 (La.1981). The record reflects that the trial judge did not err in finding that the questions sought to be propounded to McCoy would require inculpatory answers. See State v. Toussaint, 502 So.2d 599 (La.App. 3rd Cir.1987).
This assignment of error lacks merit.

ASSIGNMENT OF ERROR NO. 5
Defendant next contends that the evidence offered by the State was not sufficient to convict.
When this issue is made on appeal, the critical inquiry of the reviewing court is whether, after viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime proved beyond a reasonable doubt. Jackson v. Virginia, 443 U.S. 307, 99 S.Ct. 2781, 61 L.Ed.2d 560 (1979); State ex rel. Graffagnino v. King, 436 So.2d 559, at 563 (La.1983); State v. Duncan, 420 So.2d 1105 (La.1982); State v. Moody, 393 So.2d 1212 (La.1981). It is the role of the fact finder to weigh the respective credibilities of the witnesses, and the appellate court should not second-guess the credibility determination of the trier of fact beyond the sufficiency evaluations under the Jackson standard of review. See State ex rel. Graffagnino, supra, citing State v. Richardson, 425 So.2d 1228 (La.1983).
La.R.S. 40:967 A, provides in pertinent part as follows:
"A. Manufacture; distribution. Except as authorized by this part, it shall be unlawful for any person knowingly or intentionally:
(1) To produce, manufacture, distribute, or dispense or possess with intent to produce, manufacture, distribute, or dispense, a controlled dangerous substance classified in Schedule II;"
As the statute indicates, the State was required to prove beyond a reasonable doubt that defendant distributed a substance which is classified under Schedule II as a controlled dangerous substance. Distribution of a controlled dangerous substance requires only general criminal intent. State v. Rexrode, 536 So.2d 671 (La. App. 3rd Cir.1988).
Deputy Kenneth Hertzog, who had worked for the Rapides Parish Sheriff's Office for approximately three and one-half years at the time of the trial, testified about the undercover operation that led to the appellant's arrest. On September 30, 1988, at approximately 6:30 p.m., he met a confidential informant at the Jena Motel who subsequently introduced him to the defendant and Louis McCoy. The men entered into a narcotic transaction whereby Deputy Hertzog gave the defendant and McCoy $100.00 and they in turn went to get the cocaine. At approximately 9:30 p.m. the two men returned and handed Deputy Hertzog a plastic bag containing a powdered substance. T.J. Shuflin, the technical supervisor of the North Louisiana Crime Lab in Alexandria, tested the contents of the plastic bag and found that it was cocaine. Deputy Hertzog identified the defendant, Herbert Jones, Jr., as the individual who sold him cocaine on that evening. When this evidence is considered in the light most favorable to the prosecution, any rational trier of fact could have concluded beyond a reasonable doubt that cocaine was sold to Deputy Hertzog by Herbert Jones, Jr.
*796 This assignment of error is without merit.

ASSIGNMENT OF ERROR NO. 6
Defendant contends that the ten year sentence imposed by the trial court is excessive.
The principles applicable in appellate review of sentences are well settled and do not require reiteration.
The statutory sentencing range for distribution of cocaine is five to 30 years at hard labor, and a fine of not more than $15,000. La.R.S. 40:967(B)(1). Defendant's ten year sentence is in the minimum range allowable under the law.
Defendant claims that the sentence is excessive because he is a first felony offender. Although defendant only had misdemeanor convictions prior to this conviction, the record reflects that defendant has been charged in a number of matters involving distribution of drugs. The presentence investigation report reveals six misdemeanor traffic convictions and the fact that the defendant was previously twice charged with distribution of marijuana. He was found not guilty of a May 1987 charge and the district attorney's office nolle prossed a March 1988 charge. In October 1988 the defendant was charged with the instant offense and pled guilty to a possession of marijuana charge. An additional charge of distribution of cocaine is pending against the defendant.
The defendant acknowledged social use of alcohol and that he had a serious drug problem. He used marijuana heavily and in 1988 injected cocaine into himself based upon a dare from someone else. The trial judge noted scars on his arms which suggested that the defendant was injecting cocaine at the time of sentencing.
The trial judge found that defendant's criminal conduct threatened serious harm to society in general. He noted that although defendant had no previous felony drug convictions, numerous other defendants in his court indicated that defendant was the source of the drugs they used. The trial judge specifically considered the fact that defendant was a first time felony offender but felt there was an undue risk that if he suspended or probated any part of the sentence the defendant would commit another crime.
A sentencing court is given wide discretion in the imposition of sentence within statutory limits, and a sentence should not be set aside as excessive in the absence of manifest abuse of the sentencing court's discretion. State v. Jones, 546 So.2d 1343 (La.App. 3rd Cir.1989). We find no abuse of the sentencing court's discretion in the instant case.

ASSIGNMENT OF ERROR NO. 7
Finally, defendant contends that the trial court erred in considering matters outside the presentence investigation report and the record when sentencing him. Specifically, defendant refers to the court's statement during sentencing as follows:
"There's no grounds to excuse or justify his criminal conduct or establish a defense in this particular case. In fact, the court is aware over continuous proceedings in this court that any time a criminal activity involving drugs come [sic] up in Mr. Jones's share of the community, Mr. Jones's name always come [sic] up involved in that. It is included in all of these charges where it, where in the past he has been found not guilty and other areas where other parties who are before the court pleading have always indicated that their source of drugs has been Mr. Herbert Jones."
Defendant urges that hearsay allegations made by defendants in other criminal proceedings should not be considered in sentencing.
Prior criminal activity in general is a proper factor for a trial judge to consider at sentencing. Sources of information from which a sentencing court may draw are extensive and the traditional rules of evidence are not bars to consideration of otherwise relevant information. Prior criminal activity is one of the factors listed in La.C.Cr.P. art. 894.1 to be considered in sentencing. However, prior criminal activity is not limited to convictions alone. State *797 v. Brown, 410 So.2d 1043 (La.1982); State v. James, 447 So.2d 580 (La.App. 3rd Cir. 1984). This assignment of error has no merit.
Defendant's conviction and the sentence imposed are affirmed.
AFFIRMED.