JiCOOKS, Judge.
Frank H. Coleman appeals his Distribution of “crack” Cocaine conviction, in violation of La. R.S. 40:967 A(l). For the following reasons, we reverse defendant’s conviction.
FACTS
On September 23, 1994, the Cameron Parish Sheriffs Department conducted an undercover narcotics “sting” at the Warren Miller Subdivision in Cameron Parish. The operation’s supervisor was Deputy Michael Hebert, who on that particular evening worked with two agents, including Garfield Baker of Texas (hereinafter referred to as “Agent 31”).[1] The other agent, known to defendant only as “Confidential Informant # 106” (CI-106) provided certain information Agent 31 used to make the narcotics purchase. Particularly, CI-106 informed the deputies that he knew where to buy drugs and agreed to lead them to the location. The *804 extent of Cl -106’s farther participation in |2the transaction is fundamental to defendant’s appeal.
Deputy Steven Cheramie of the Cameron Parish Sheriffs Department and Deputy Hebert met Agent 31 and CI-106 around 10:00 that evening, placed a transmitter on Agent 31, and parked their unit less than half a mile from where the alleged drug transaction subsequently took place. Agent 31 was given $50.00 to purchase narcotics. The deputies then watched as Agent 31 and CI-106 drove another vehicle into the Warren Miller Subdivision intending to buy drugs.
The vehicle containing the undercover agents pulled up to a trailer home allegedly known for drug trafficking, where they met Leroy Moore, Jr. At this point, deputies Cheramie and Hebert were unable to see the agents and Moore. However, they continued to monitor the agents’ activities via listening devices.
Whether Baker alone or CI-106 and Baker together expressed to Moore a desire to buy a “50” is a point in dispute.[2] The record does establish, however, only CI-106 and Moore were familiar with each other. Asked what happened when he first approach the car in which Baker and CI-106 were sitting, Moore testified CI-106 asked for defendant by ' name. Baker subsequently handed Moore $50.00. Moore apparently left, obtained $50.00 worth of “crack” cocaine, and returned to the vehicle. Deputies Cheramie and Hebert then met Agent 31 and CI-106 at another location, and received the evidence (ope rock of crack cocaine).
Frank H. Coleman was subsequently indicted on five (5) counts of distributing cocaine in violation of La.R.S. 40:967 A (1). One count stemmed from the occurrences on September 23,1994. On September 28, 1995 the trial court denied defendant’s Motion to Reveal the Identity of the Confidential Informant. Defendant maintained CI-106 was a participant and became a principal in the drug buy. The State Uargued the purchase of the crack cocaine was via Agent 31 or, in the alternative, through Moore and CI-106’s identity was, thus, privileged. The motion was re-urged and again denied on October 12, 1995. The trial court also refused defendant’s request to order the State to disclose the preference of his cases which it intended to try during the week beginning October 16, 1995. A jury convicted defendant as charged. His Motions for New Trial and Post-Verdict Judgment of Acquittal also were denied.
Defendant appeals his conviction asserting the following assignments of error:
1. The trial court erred in denying the defendant’s Motion to Reveal the Identity of Confidential Informant # 106.
2. The trial court erred in denying defendant’s Motion for New Trial where CI-106 testified he could not identify the defendant on the night of the transaction.
3. The trial court erred in denying defendant’s request to order the State to disclose the preference of the ease it intended to try where defendant was scheduled for trial on five separate charges.
4. The trial court erred in fading to grant defendant’s Motion for Post Verdict Judgment of Acquittal.
ASSIGNMENT OF ERROR # 1: IDENTITY OF CI-106
Defendant argues the trial court erred when it denied his Motion to Reveal the Identity of Confidential Informant # 106. At the hearing on defendant’s motion, the State argued CI-106 was actually an agent and would testify at trial. Denying the motion, the trial judge with emphasis noted, “[w]e have an understanding that the agents will testify at trial ...” Defendant filed a supervisory writ application with this court seeking review of the trial court’s ruling. Although, we found “no error in the trial court’s ruling,” we too emphasized that “the undercover agents ... will be testifying at the defendant’s trial.” State v. Coleman, an unpublished writ bearing docket number 95-01380 *805 (La.App. 3 Cir. 1/29/96)[3], writ denied, 96-0517 (La.4/8/96), 671 So.2d 339. In State v. Johnson, 93-711 (La.App. 3 Cir. 2/2/94); 631 So.2d 658, 661, reversed on other grounds, 94-1379 (La.11/27/95); 664 So.2d 94, we held “[a] prior ruling on a supervisory writ does not bar reconsideration of the issue on appeal, nor does it prevent the appellate panel from reaching a different conclusion on the issue.”
CI-106 did not testify at trial. Before the first witness was sworn, defense counsel objected to the State’s failure to produce CI-106 noting:
“That person has not been produced, and we now know that he is a material witness in this case due to the offense report that was provided to me ...”
The trial transcript does not contain an explanation for CI-106’s absence. The minutes show, however, on October 17, 1995 (the first day evidence was introduced at trial) the “State moved for a bench warrant to be issued for Leon Allen for failure to appear as a witness.” CI-106 was Leon Allen. The record is devoid of any further discussion regarding Allen’s failure to appear or testify.
Although the government is required to disclose the identity of confidential informers under some circumstances, there is no general requirement mandating disclosure of an informer’s identity in all cases. See United States v. Marcello, 508 F.Supp. 586, 608 (E.D.La.1981), relying on Rugendorf v. United States, 376 U.S. 528, 84 S.Ct. 825, 11 L.Ed.2d 887 (1964) and Roviaro v. United States, 353 U.S. 53, 77 S.Ct. 623, 1 L.Ed.2d 639 (1957). In fact, as a general rule, an informant’s identify is privileged information. State v. Oliver, 430 So.2d 650 (La.1983), cert. denied 464 U.S. 997, 104 S.Ct. 495, 78 L.Ed.2d 688. See also State v. Gamble, 93-809 (La.App. 3 Cir. 2/2/94); 631 So.2d 586. Roviaro did, however, place important limitations on the applicability of the so-called “informer’s privilege:”
Where the disclosure of an informer’s identity or of the contents of his communication, is relevant and helpful to the defense of an accused, or is essential to a fair determination |sof a cause, the privilege must give way.
353 U.S. at 59, 77 S.Ct. at 627 (citations omitted) [emphasis added].
In brief, defendant cites State v. James, 396 So.2d 1281 (La.1981) to support his assertion that, because CI-106’s identity was not revealed to him before trial, his constitutional right to confront and cross-examine his accusers during trial was violated. In James, the Louisiana Supreme Court addressed the two important, but often conflicting, policies of (1) protecting a defendant’s right to prepare his defense and cross-examine his accusers and (2) protecting law enforcement’s interest in encouraging citizens to identify criminals without fear of reprisals.
Expounding on the “informer’s privilege,” the James court explained, “[t]he identity of an informer should be made known to the accused only when the defendant’s right to prepare his defense outweighs the need for protection of the flow of information.” Id. at 1284; citing Roviaro, 353 U.S. 53, 77 S.Ct. 623; State v. Williams, 347 So.2d 184 (La. 1977); State v. Dabon, 337 So.2d 502 (La. 1976); State v. Dotson, 260 La. 471, 256 So.2d 594 (1971), cert. denied 409 U.S. 913, 93 S.Ct. 242, 34 L.Ed.2d 173 (1972). The court further indicated “the state might properly be required to disclose the identity of the confidential informant, if it intends to produce evidence at the merit-trial of an incident at which the informant was present or in which the informant set up or participated in the crime.” Id., citing State v. Diliberto, 362 So.2d 566 (La.1978). Usually, only if the informant’s “participation” is considered substantial will courts grant a motion such as that submitted by defendant. See State v. Davis, 411 So.2d 434 (La.1982); State v. Fontenot, 524 So.2d 867 (La.App. 3 Cir.1988); and State v. White, 508 So.2d 982, (La.App. 3 Cir.1987).
In Fontenot, defendant was introduced to a detective by an informant in a bar. After several minutes, the informant told the de *806 tective that defendant would try to get him some marijuana. Several minutes later, defendant advised the confidential leinformant to tell the detective to follow him (defendant) outside. Defendant then introduced the detective to another individual from whom defendant purchased marijuana. At trial, defendant asked the detective to identify the confidential informant. The State’s objection to this question was sustained. On appeal, defendant argued that the confidential informant was a participant in the crime and he needed to know her identity so he could cross-examine her at trial. We noted the informant helped arrange for the sale of marijuana to take place and took part in the illegal transaction itself. Thus, we concluded her participation was sufficient to warrant disclosure of her identity.
Although CI-106 did not actually buy the cocaine in this case, his participation was not limited to merely furnishing a tip that enabled the police to make an arrest. He and Agent 31 were law enforcement’s only link to the alleged drug transaction. Both informants served as the “eyes, ears and hands” of the Cameron Parish Sheriffs Department during the operation involving defendant. What distinguishes this case from those citing minimal participation by the informant is that in those cases police officers actually purchased drugs from the defendants after the transaction was arranged or in some other way facilitated by the informant. White, 508 So.2d 982; Davis, 411 So.2d 434. Here, Agent 31, along with CI-106, actually took money from the officers, gave that money to someone who allegedly purchased the drugs from defendant, and together they brought the evidence back tó the officers. Only CI-106 was familiar with the purchaser and he specifically asked for defendant. CI-106’s participation in the drug transaction was vital and necessary for its completion. While the significance of CI-106’s involvement is now contested by the State, at the September 28, 1995 hearing, it conceded “the C.I. actually ... is an agent” and “[b]oth |7agents participated in the actual purchase of the drugs from the Defendant. [4] In Fontenot, 524 So.2d 867, we found without “evidence of the participation of the confidential informant., the evidence would have been wholly insufficient to have established that defendant [distributed illegal drugs].” Likewise in this case, the district attorney acknowledged he needed CI-106 to “be present to testify for our case or we have no case.”[5] The measure of an informant’s involvement in the actual criminal transaction is most important; but disclosure of his identity should not hinge solely on whether his participation is less conspicuous than the actual handling of drugs or money. As noted above, the rationale supporting the rule stated in Diliberto and relied upon in James is “founded on the assumption that knowledge of the informer’s identity ... may be highly relevant or helpful to the defense.” Where the State admits it would “have no case” without an informant’s allegations and input, such evidence is certainly “highly relevant or helpful” to the defendant. Id.
A trial court has wide discretion in determining whether disclosure of an informant’s identity is proper. State v. Carey, 626 So.2d 905 (La.App. 3 Cir.1993). However, where evidence provided by an informant is so vital to the State’s indictment as to render the charges inconsequential without it, disclosure of the informant’s identity is necessary to protect the defendant’s right of confrontation. In addition to finding CI-106’s “participation” in the alleged narcotics sale sufficient to require his identification, we further find the otherwise privileged information was exceptionally pertinent to the defense. CI-106’s identity should have been disclosed to defendant upon request so as to afford defendant the ability to subpoena and confront him at trial. Defendant’s right of confrontation is “a paramount and fundamental right indispensable to a fair trial.” State v. Senegal, 316 So.2d 124, 128 (La.1975). “It is a | gsubstantial, substantive and valuable right which assures the accused that he shall have the opportunity to be confronted by the witnesses against him.” Id. In a ease such as this one, where “[t]ak[ing] away the informant’s participation ... the prosecution *807 would have no case,” the “defendant’s right to prepare his defense outweighs the need for protection of the flow of information.” Carey, 626 So.2d at 908; James 396 So.2d at 1284, citing Roviaro, 353 U.S. at 59, 77 S.Ct. at 627; Dotson, 256 So.2d 594. Unlike the State, defendant relies upon “a constitutional right, not a mere privilege.” Senegal, 316 So.2d at 128.
DECREE
We find the trial court’s failure to grant defendant’s Motion to Reveal the Identity of CI-106 constituted legal error; and, accordingly, reverse defendant’s conviction. Consideration of the remaining assignments of error is, consequently, unnecessary. For the foregoing reasons, the conviction and sentence of defendant are hereby reversed and vacated. The case is remanded to the district court for a new trial in accordance with this opinion.
REVERSED, VACATED, AND REMANDED.
GREMILLION, J., dissents with written reasons.

. Garfield Baker was an undercover agent from Texas employed by the Cameron Parish Sheriffs Department to perfect certain drug buys.

. A "50" is a slang used in the drug trade to express a desire to purchase $50.00 worth of crack cocaine.

. Cooks, J. dissented and commented that fundamental fairness required the state to reveal the identity of the agents prior to trial.

. See Tr. p. 3 [Emphasis ours].

. Tr. p. 3 [Emphasis ours].